GEORGE L. KROLL, Plaintiff-Appellee, *v.* SUGAR SUPPLY CORPORA-TION, Defendant-Appellant.

First District (5th Division)   No. 82—1428

Opinion filed July 22, 1983.—Rehearing denied August 24, 1983.

Jon R. Lind, Paul W. Schroeder, and John W. Treece, all of Isham, Lincoln & Beale, of Chicago, for appellant.

Harvey J. Barnett, of Barnett and Beigel, Ltd., of Chicago, for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Defendant appeals from a summary judgment which ordered it to pay plaintiff a 1978 employment bonus of $164,560. According to defendant, the trial court misinterpreted the pertinent employment agreement, and it was improper to enter summary judgment because there are genuine issues concerning material facts. We find no merit in these arguments, and we affirm.

The parties agree that almost all the material facts are undisputed, and the following facts are material to our decision:

Plaintiff entered into a three-year employment agreement with Sugar Supply Corporation (Old Sugar Supply) on December 30, 1975. This agreement obligated Old Sugar Supply to pay plaintiff an annual

bonus based on its pre-tax net operating income. However, on January 3, 1978, Old Sugar Supply sold most of its assets (including its corporate name) to the defendant RHM Food Ingredients, Inc. Defendant then changed its name to Sugar Supply Corporation (New Sugar Supply), and Old Sugar Supply changed its name to M. L. Hamilton & Co.

The purchase agreement between Old and New Sugar Supply provided that the purchaser would "assume" certain obligations, including plaintiff's employment contract, and plaintiff worked for New Sugar Supply throughout 1978. Although New Sugar Supply agrees that it owes plaintiff a 1978 bonus based on its 1978 pretax net operating income, plaintiff contends that defendant breached the employment agreement by improperly calculating the amount of his 1978 bonus. Explanation of the precise nature of the dispute requires examination of this contract in light of accounting principles which the parties inform us are undisputed.

Paragraph 4 of the 1975 employment agreement between plaintiff and Old Sugar Supply provides that for three years plaintiff would receive an annual bonus based on the pretax net operating income of "the corporation." The agreement further specifies that plaintiff's bonus is to be calculated by taking the pretax net operating income of "the corporation" (minus certain income such as profits from investments and the sale of capital assets), then subtracting $833,333 and multiplying the result by 12%.

Paragraph 4 also provides that the pretax net operating income of "the corporation" shall be determined by using the First-In/First-Out (FIFO) method of accounting. Under this method, the products which a business sells from its inventory of merchandise are assumed, for accounting purposes, to be the products which it first purchased. Thus, earnings on a sale are calculated by subtracting from the sale price the cost of the products which the seller first purchased.

Although, under the provisions of paragraph 4, plaintiff's bonus was to be based upon his employer's income as calculated by using the FIFO method, New Sugar Supply used the Last-In/First-Out (LIFO) method of accounting during 1978. When LIFO is used to calculate earnings from sales, the cost of products sold from inventory are assumed to be the cost of the products which the seller most recently purchased. Earnings derived from a sale are calculated by subtracting from the sale price the cost of the products most recently purchased by the seller. Therefore, LIFO accounting is often used during periods of inflation because the amount of income realized from a sale will be less than the amount of income as calculated under

FIFO accounting. In other words, when LIFO accounting is used during periods of inflation it defers income by "embedding" earnings in the corporation's inventory.

Defendant's 1978 income was initially calculated by using LIFO accounting, but as noted above, determination of plaintiff's bonus required use of FIFO accounting. Defendant agrees, however, that conversion from LIFO to FIFO accounting is accomplished by taking a firm's income (as calculated on a LIFO basis) and adding to this figure the difference between the "LIFO reserve" which the firm had at the beginning and end of its fiscal year. "LIFO reserve" is the amount of income which a business has been able to defer (i.e., "embed" in its inventory) by using LIFO rather than FIFO accounting during a period of inflation.

It is further undisputed that until a new business begins making sales it does not have any income which can be deferred or "embedded" in its inventory as LIFO reserve. Therefore, as a new business which first obtained an inventory when it purchased the assets of Old Sugar Supply on January 3, 1978, New Sugar Supply started the year with a LIFO reserve of zero. At the end of 1978, however, New Sugar Supply had a LIFO reserve of $2,231,780. Accordingly, using these undisputed accounting principles to compute the corporation's 1978 income on a FIFO basis, its LIFO-basis income must be added to the difference between its year-beginning LIFO reserve of zero and its year-end LIFO reserve of $2,231,708. In short, under application of these undisputed accounting principles, New Sugar Supply's FIFO-basis pretax net operating income for 1978 is calculated by adding $2,231,708 to its pretax net operating income as determined on a LIFO basis.

The dispute in the present case centers on the fact that instead of using its own 1978 year-beginning LIFO reserve of zero, New Sugar Supply or its accountants decided to use (as the firm's year-beginning LIFO reserve) the 1977 year-end LIFO reserve of Old Sugar Supply: $880,395. Consequently, by ignoring its own year-beginning LIFO reserve and substituting instead the year-end LIFO reserve of Old Sugar Supply, New Sugar Supply lopped $880,395 off its 1978 FIFO-basis income.

New Sugar Supply concedes that it owes plaintiff a bonus based on its 1978 pretax net operating income (as defined in paragraph 4 of the 1975 employment agreement), and the difference between the amount of this bonus as calculated by plaintiff and defendant—$105,647—depends upon whether plaintiff's employment agreement was breached when New Sugar Supply calculated its income by using

the LIFO reserve of another party—Old Sugar Supply.

Plaintiff's motion for summary judgment asserted that the unambiguous language of the bonus provision required New Sugar Supply to use its own LIFO reserve figures when calculating its FIFO-basis pretax net operating income. The trial court agreed, and entered judgment for plaintiff.

OPINION

Defendant initially argues that the 1975 employment contract contains a "latent ambiguity" because it does not explicitly specify how to calculate plaintiff's bonus in the event his original employer sold its assets to a third-party and transferred his employment agreement to the purchaser. According to defendant, parol evidence shows that the original contracting parties (plaintiff and Old Sugar Supply) intended that in the event of a sale of assets plus a transfer of plaintiff's employment contract, plaintiff's new employer would be entitled to use the old employer's LIFO reserve when calculating the bonus owed to plaintiff by the new employer.

Additionally, focusing again on the alleged intent of plaintiff and Old Sugar Supply in 1975, defendant argues that reading the contract "as a whole" shows that the parties intended to disregard separate corporate identities in the event Old Sugar Supply sold its assets to another corporation and transferred plaintiff's employment contract to the purchaser. Still further, defendant argues that the same conclusion must be reached by giving the "most reasonable" construction to the allegedly ambiguous 1975 agreement.

As will be explained below, proper consideration of these arguments depends upon resolution of an issue which defendant raised in the trial court and which it briefly refers to in a footnote to its opening appellate brief.

Responding to plaintiff's motion for summary judgment, defendant argued that under the assumption of obligations provided in the 1978 purchase agreement between Old and New Sugar Supply, plaintiff's 1978 bonus under the 1975 employment agreement "should be determined by reference to the 'pre-tax net operating income' of *Old Sugar Supply*, the party to that agreement." Since the record contains no indication of Old Sugar Supply's 1978 income, defendant concluded that plaintiff failed to show that he was entitled to summary judgment.

In response to this argument, plaintiff contended that the "assumption" provided in the 1978 purchase agreement resulted in a substituted contract in which "New Sugar Supply became 'the corpora-

tion' defined in the terms of the employment agreement, and it was obligated to pay Kroll his bonus based upon the pre-tax net operating income of New Sugar Supply."

The threshold question in the present case, therefore, is whether, in 1978, New Sugar Supply merely assumed the duty of paying plaintiff a bonus based on the 1978 income of Old Sugar Supply, or whether the parties created a new contract, with a substituted obligor, under a novation. We start by examining the doctrine of novation.

> " 'Novation' may be broadly defined as a substitution of a new contract or obligation for an old one which is thereby extinguished. More specifically, it is the substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished. A novation is a mode of extinguishing one contract or obligation by another, that is, the substitution, not of a new paper or note, but of a new obligation in lieu of an old one, the effect of which is to pay, dissolve, or otherwise discharge it." 15 Williston on Contracts sec. 1865, at 585-86 (3d ed. 1972); see also Restatement (Second) of Contracts secs. 279, 280 (1979); and *Kiefer v. Reis* (1928), 331 Ill. 38, 43.

Consequently, if there was a novation in 1978, the original agreement with Old Sugar Supply was discharged and replaced by a new agreement in which defendant was substituted as "the corporation" in the bonus provision of the employment agreement. Defendant therefore would be obligated to pay plaintiff a 1978 bonus based on defendant's own 1978 income, rather than the 1978 income of Old Sugar Supply.

Intent to create a novation can be implied from the circumstances of a transaction or the subsequent conduct of the parties. (*Burnett v. West Madison State Bank* (1940), 375 Ill. 402, 410.) Moreover, even though the 1978 purchase agreement does not clearly state whether the parties intended to create a novation or merely to delegate certain contract duties to New Sugar Supply, " '[i]t is a familiar rule of construction, that where the terms of an agreement are in any respect doubtful or uncertain and the parties to it have, by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the courts, in the event of litigation concerning it.' " *Pocius v. Halvorsen* (1963), 30 Ill. 2d 73, 81, quoting *People ex rel. Attorney General v. Murphy* (1886), 119 Ill. 159, 166.

Applying these principles to the record in the present case,

we find that there is no genuine issue of material fact, and that the trial court properly concluded that the parties created a novation in which New Sugar Supply became a substituted obligor. "Under section 57 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57 [now recodified as section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005)], summary judgment will be granted only if the pleadings, affidavits and depositions on file reveal that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 463-64.) Moreover, "[i]t may be stated generally that if what is contained in the pleadings and affidavits would have constituted all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict, then a summary judgment should be entered." *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587.

The depositions and admissions contained in the record show that when New Sugar Supply calculated plaintiff's 1978 bonus, it relied entirely on its own income figures (except for the disputed year-beginning LIFO reserve). Through its conduct, New Sugar Supply manifested an understanding that it had been substituted as the obligor under plaintiff's employment agreement. Moreover, by going to work for New Sugar Supply plaintiff manifested the same understanding. The intent of the parties concerning the 1978 purchase agreement, as evidenced by their conduct, is reasonable, and it must be adopted by the courts in the absence of countervailing evidence. We have not been referred to any such countervailing evidence, however, and we find that plaintiff has established there is no genuine dispute concerning the fact that (a) plaintiff's original employment agreement was discharged in 1978, and (b) defendant is liable to plaintiff as a substituted obligor under a novation.

■ Having considered this threshold question, defendant's arguments concerning contract construction are easily resolved. As noted above, defendant focuses on the 1975 agreement between plaintiff and Old Sugar Supply, asserting that there is a "latent ambiguity" in this agreement because it does not expressly specify how plaintiff's bonus is to be calculated in the event the contract is assigned to an entity which purchases Old Sugar Supply's assets. Defendant further contends that parol evidence, plus a discerning reading of the entire contract, show that plaintiff and Old Sugar Supply intended that New Sugar Supply could disregard separate corporate identities when calculating plaintiff's 1978 bonus.

However, as we concluded above, this case concerns an alleged

breach of the 1978 substituted contract between plaintiff and defendant, and it is not relevant to try to ascertain the intent of the parties to the discharged 1975 agreement. "Contracts must be construed and given effect with reference to the intention of the parties at the time of entering into them" (*Cedar Park Cemetery Association, Inc. v. Village of Calumet Park* (1947), 398 Ill. 324, 335), and the relevant intent in this case is the intent of plaintiff and defendant when they entered into a substituted contract in 1978. Defendant mistakenly assumes that the 1975 contract was merely assigned to defendant, rather than being discharged, and defendant's arguments miss the mark because they focus on the intent of the parties to the 1975 agreement.

Focusing on the substituted contract (rather than the discharged contract), there is no "latent ambiguity." The clear and unambiguous language of the substituted contract requires defendant, as "the corporation," to pay plaintiff a 1978 bonus which is based on defendant's own 1978 financial figures. Computing this bonus by using the LIFO reserve of a third-party such as Old Sugar Supply is improper because the resulting figure does not represent defendant's own income.

We have carefully examined the substituted contract, reading it "as a whole," and we find no indication that the parties intended to permit defendant to calculate its income by using the profit figures of a third party. Therefore, even though defendant asserts that it would be "more reasonable" to construe the pertinent agreement in a manner which would permit it to save more than $100,000, "[c]ourts may not, because a more equitable result might be reached thereby, construe into a contract provisions which are not there." *Abingdon Bank & Trust Co. v. Bulkeley* (1945), 390 Ill. 582, 591.

Several other arguments must be briefly mentioned. Defendant contends that the trial court erred by (1) refusing to consider parol evidence adduced by defendant in support of its arguments, and (2) by striking affidavits attached to its post-judgment motion. In reaching our decision, however, we have considered the relevant portions of this material, and the alleged errors are, at most, harmless.

Finally, defendant argues that summary judgment was improper because a portion of the employment agreement states that "[t]he pre-tax net operating income shall be determined by the certified public accountants regularly retained by the corporation, and their determination shall be binding and conclusive on the parties hereto."

In determining plaintiff's 1978 bonus, New Sugar Supply's accountants used Old Sugar Supply's 1977 year-end FIFO reserve when calculating New Sugar Supply's 1978 FIFO-basis income. Thus, defendant concludes and the accountants' decision is binding and conclusive.

We agree that defendant's 1978 LIFO-basis income, as calculated by the corporation's accountants, is binding and conclusive. And we agree that the figure given by the accountants as defendant's 1978 year-end LIFO reserve is also controlling. But what is neither binding nor controlling is the accountants' interpretation of the employment agreement as requiring or permitting them to calculate plaintiff's 1978 bonus by using the LIFO reserve figures of a third-party.

The unambiguous language of the bonus provision required use of defendant's own financial figures when calculating plaintiff's bonus. Using Old Sugar Supply's LIFO reserve to calculate New Sugar Supply's FIFO-basis income violated the employment agreement because it resulted in a hybrid figure which only partially reflected New Sugar Supply's income.

The question of whether Old Sugar Supply's 1977 year-end LIFO reserve could be used in calculating New Sugar Supply's 1978 income is a question of law concerning contract interpretation, not a bookkeeping question for accountants. As noted above, this question must be resolved in plaintiff's favor, and the accountants' conclusion on this question of law is neither binding nor conclusive on plaintiff or the courts.

Based on all the reasons given above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN and MEJDA, JJ., concur.