Ronald SWICK, Plaintiff–Appellant,

v.

CITY OF CHICAGO, et al.,
Defendants–Appellees.

No. 92–4115.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1993.

Decided Dec. 2, 1993.

James R. Potter, Kinoy, Taren, Geraghty & Potter, Chicago, IL (argued), for plaintiff-appellant.

Lawrence Rosenthal, Deputy Corp. Counsel, Mardell Nereim (argued), Kelly R. Welsh, Asst. Corp. Counsel, Benna R. Solomon, Joan Flynn, Asst. Corp. Counsel, Paulette A. Petretti, Office of the Corp. Counsel, Appeals Div., Chicago, IL for defendants-appellees.

Before POSNER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.

POSNER, Chief Judge.

Ronald Swick, a veteran Chicago police officer, was placed on involuntary sick leave for more than a year beginning in February 1990, because of alleged psychological problems. His income was not diminished, because while he received no salary during the period of the involuntary leave he received the same amount of money in the form of sick pay. But he was required to turn in his badge and gun and was forbidden to wear his uniform or exercise the arrest or other powers of a police officer. His suit claims that he was placed on leave without a hearing or other safeguards, and thus denied due process of law. The district court dismissed the suit on the ground that Swick had not been deprived of property within the meaning of the due process clause of the Fourteenth Amendment.

When state law confers tenure or some other right on a public employee—confers, that is to say, an entitlement as distinct from merely the hope or expectation that his employer's discretion will be exercised in his favor—the right is considered a form of property of which the employee may not be deprived without due process of law. *Bishop v. Wood,* 426 U.S. 341, 344–45, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976); *Altman v. Hurst,* 734 F.2d 1240, 1242 (7th Cir.1984) (per curiam). The state law upon which Swick relies provides that a nonprobationary police officer may not be "removed or discharged, or suspended for more than 30 days except for cause." 65 ILCS 5/10–1–18.1 (1993 Supp.). Swick argues that to be placed involuntarily on sick leave is to be suspended—a dictum in *Gibson v. City of Chicago,* 910 F.2d 1510, 1517 (7th Cir.1990), suggests that a police officer stripped of his authority by being placed on sick leave has been the equivalent of "suspended" from his office—and he points out that the statute is not limited to suspensions without pay and that loss of the accouterments of a public officer's authority and badge of office can inflict dignitary and psychological harm. But he does not suggest that the "suspension" inflicted any pecuniary loss, direct or indirect. It is true that by using up a year's sick leave Swick was in danger of not having enough sick-leave benefits to make up for the loss of his regular salary should he again be placed on sick leave after his reinstatement to duty. But the danger never materialized, as he retired shortly after being reinstated. The danger was never great, because a police officer in Chicago is entitled to a full year's sick-pay benefits for every two years that he is employed. Swick does not argue that he lost pension or welfare benefits as a consequence of having been forced to take sick leave, or that he could have cashed out unused sick leave on retirement. We can imagine a case in which a period of forced inactivity impeded promotional opportunities or had other indirect effects on post-retirement income (cf. *Moskowitz v. Trustees of Purdue University,* 5 F.3d 279, 282–84 (7th Cir. 1993)), but that is not argued either and would be implausible since Swick was on the verge of retirement.

The city argues that Swick was not suspended and alternatively that if he was he suffered no deprivation. We agree that he was not suspended and that "no Illinois law ... protects a Chicago patrol officer from adverse action short of discharge or suspension." *Confederation of Police v. City of Chicago,* 547 F.2d 375, 376 (7th Cir.1977). Suspension, like removal and discharge, is normally a disciplinary measure; This is plain from the statute's references to "charges," "improper or illegal act," and "defenses," and even more clearly from the preceding section, which refers to "suspension, removal or discharge" as "disciplinary action." 65 ILCS 5/10–1–18(c) (1993 Supp.); see also *Burton v. Civil Service Comm'n,* 76 Ill.2d 522, 31 Ill.Dec. 791, 793, 394 N.E.2d 1168, 1170 (1979); *van Blommesteyn v. Dept. of Children & Family Services,* 164 Ill. App.3d 1094, 116 Ill.Dec. 27, 31, 518 N.E.2d 649, 653 (1987); *Bauer v. City of Chicago,* 137 Ill.App.3d 228, 91 Ill.Dec. 863, 866, 484 N.E.2d 422, 425 (1985). It is understandable, therefore, why police unions should insist that an officer not be suspended without cause, even if the suspension is with pay, although an alternative reading of the statute (not one more favorable to Swick, however) is that the suspension to which it refers is, implicitly, a suspension without pay. This is

plausible in light of the bracketing of suspension with removal and discharge, both of which actions entail a cessation of pay, and is supported by case authority. E.g., *Clark v. Morris*, 99 Ill.App.2d 24, 240 N.E.2d 515, 518 (1968); *McCoy v. Kamradt*, 136 Ill.App.3d 551, 91 Ill.Dec. 198, 204, 483 N.E.2d 544, 550 (1985); see also *Bauer v. City of Chicago, supra*, 91 Ill.Dec. at 866, 484 N.E.2d at 425. Placing a person on sick leave is not a disciplinary measure; nor does Swick argue that by forcing him to take sick leave for alleged "psychological" problems, still a source of stigma in our culture, the city harmed his reputation in a way that might be actionable under the Fourteenth Amendment.

But even if this is wrong and Swick was suspended within the meaning of a statute that creates an entitlement not to be suspended for more than thirty days without cause, we do not think he has a claim under the Fourteenth Amendment. We do not think that "property" within the sense of the amendment should be extended to the purely dignitary or otherwise nonpecuniary dimensions of employment. *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370–71 (3d Cir. 1993); cf. *Hardiman v. Jefferson County Bd. of Education*, 709 F.2d 635, 638 (11th Cir. 1983). Some people love their work. But if unjustly placed on sick leave with (in effect) full pay, Swick could have taken another job and thus ended up with more money for the year than if he had been allowed to continue to do his police work. Perhaps not enough money to balance the diminution in psychic satisfaction if he loves police work as much as he claims. (But then why did he retire when he did? Maybe he had reached mandatory retirement age, but we are not told.) But the difference if any is too small, and too difficult to measure, to support a federal suit.

The maxim *de minimis non curat lex* retains force even in constitutional cases, even in civil rights cases. *Hessel v. O'Hearn*, 977 F.2d 299, 303–04 (7th Cir.1992). Its particular function is to place outside the scope of legal relief the sorts of intangible injuries normally small and invariably difficult to measure that must be accepted as the price of living in society rather than made a federal case out of. *Id.* at 304. The injury that results when a person is temporarily deprived of his right to wear a uniform and a badge, to carry a gun, to arrest people, and to carry out other functions of a police officer or other public officer is of this character. Cf. *Altman v. Hurst, supra*, 734 F.2d at 1242 n. 3; *Lyznicki v. Bd. of Education*, 707 F.2d 949, 951 (7th Cir.1983). It is a real injury, but normally small and invariably difficult to monetize by the clumsy processes of litigation. The constitutionalization of public employment is controversial even when limited to protecting the economic dimensions of employment. It should not be extended beyond harms having measurable economic value, harms that may include however a loss of pecuniary benefits not limited to wages or other compensation.

We do not think the case can be compared to *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), where a ten-day suspension from school was held to be an actionable deprivation of liberty. Children are not compensated when they are suspended. We do not doubt that Swick would have a claim if he had been suspended for however short a time without full pay. Indeed we said as much in *Hessel v. O'Hearn, supra*, 977 F.2d at 304. Decisions such as *Bart v. Telford*, 677 F.2d 622 (7th Cir.1982), in which trivial forms of retaliation for the exercise of protected rights, such as that of free speech, have been held actionable, are not apt. The threat of even a minor deprivation of some valued good can deter the exercise of protected rights; here the issue is whether the minor deprivation is actionable for its own sake when no other right is threatened.

Swick warns against "economic reductionism." But we do not suggest that the only injuries for which the law provides a remedy are those that involve a loss of money income. Such an approach would place the subject matter of much of tort law outside the boundaries of legal relief. Our point is only that the nonpecuniary dimensions of public office must be kept outside those boundaries in order to protect our overburdened federal district judges from being flooded with minor claims better handled by employer or union grievance machinery—to which in fact Swick had access—than by the

national judiciary. *Bishop v. Wood, supra,* 426 U.S. at 349–50, 96 S.Ct. at 2079–80; *Brown v. Brienen,* 722 F.2d 360, 365 (7th Cir.1983).

Our position receives support from cases dealing with constructive discharge—cases in which an employer is deemed to have discharged an employee by making his life miserable. *Cain v. Larson,* 879 F.2d 1424, 1427 n. 2 (7th Cir.1989); *Parrett v. City of Connersville,* 737 F.2d 690, 694 (7th Cir.1984). It is implicit in these cases that the actionable event is the discharge, not the petty harassments which may have cumulated to an unbearable level. Cf. *Townsend v. Indiana University,* 995 F.2d 691, 693 (7th Cir.1993). Even if the harassments could be interpreted as a breach of an explicit or implicit employment contract, as the "suspension" of officer Swick might be interpreted as a breach of a term made part of his employment contract by the statute, they do not in themselves count as deprivations of property. Otherwise we shall be hearing appeals next in cases in which the public employer reneged on a promise to give the employee an office with a view, or a second secretary, or leave to coach a Little League team. *Brown v. Brienen, supra,* 722 F.2d at 364–65.

*Gibson* is no obstacle to our conclusion. The issue there was whether an officer placed on sick leave and thus deprived of the authority of his office acted under "color of law" when he injured someone with the revolver that he should not have been carrying. We held that he did not, but this has nothing to do with whether he could have maintained a suit based on the contention that the deprivation of the authority of his office was the deprivation of a property right within the meaning of the due process clause.

AFFIRMED.