**John R. EVANS, Plaintiff,**

v.

**Michael MORGAN, in his personal capacity, Defendant.**

**No. 03–C–0179–C.**

United States District Court,
W.D. Wisconsin.

Feb. 24, 2004.

Paul A. Kinne, for Plaintiff.

John R. Sweeney, Assistant Attorney General, Madison, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

Plaintiff John Evans was the chief legal counsel for the Wisconsin Department of Revenue until defendant Michael Morgan, the secretary of the department, reassigned him to a staff attorney position. In this civil action for monetary relief, plaintiff contends that defendant Michael Morgan violated his right to due process by reassigning him without a hearing.

Presently before the court is defendant's motion for summary judgment. Defendant makes three arguments: (1) plaintiff's reassignment did not constitute a deprivation of property; (2) even if plaintiff did suffer a property deprivation, the postdeprivation remedies provided to plaintiff are adequate to satisfy the requirements of due process; and (3) defendant is entitled to qualified immunity. Although I agree with plaintiff that he was deprived of a property interest when he was reassigned, I conclude that he has failed to show that he was denied due process. Plaintiff has not shown that additional predeprivation procedures would have reduced the risk of an erroneous decision or that the postdeprivation remedies provided by the state are inadequate. Because I conclude that defendant did not violate plaintiff's due process rights, it is unnecessary to consider whether he is entitled to qualified immunity.

From the parties' proposed findings of fact and the record, I find that the following material facts are undisputed.

## UNDISPUTED FACTS

Plaintiff John Evans began working for the Wisconsin Department of Revenue in 1977. In 1991, he became the chief legal counsel for the department. The following year, plaintiff received a letter confirming that he had obtained permanent status

with respect to his position, Attorney 15—Management. The chief legal counsel is a member of the cabinet of the secretary of the department. The cabinet also includes the deputy secretary, the executive assistant, four division administrators and the director of the office of technology services.

In January 2003, the governor appointed defendant Michael Morgan as Secretary of the Department of Revenue. In February 2003, defendant appointed a new deputy secretary, a new executive assistant and three new division administrators. During a meeting, defendant asked Kirbie Mack, the administrator for the division of enterprises, to determine whether plaintiff could be transferred to a position as a staff attorney. Defendant wanted to replace plaintiff with a lawyer of his own choosing. Mack asked the human resource services bureau to research the question.

On March 19, 2003, defendant told plaintiff that he was relieved of his position as chief counsel. Defendant stated that although there was nothing wrong with plaintiff's work, defendant wanted to "bring in his own person." Plaintiff would be able to remain at the department in a different position. Two days later, defendant wrote plaintiff a letter to confirm his "transfer" to a staff attorney position, effective April 7, 2003. This was a permanent appointment.

As chief legal counsel, plaintiff supervised ten other staff attorneys. As a staff attorney, plaintiff has fewer responsibilities and no supervisory role. The staff attorney position is in a lower classification than the attorney-management position. The raise plaintiff received in June 2003 is smaller than the one he would have received as chief counsel. Since his reassignment, plaintiff has applied for a corporate counsel position in Florida, but he has not yet received an offer.

Plaintiff filed this lawsuit on April 14, 2003. On December 2, 2003, an employee from the State of Wisconsin Department of Workforce Development sent the parties a letter, requesting an update on case no. 03–C–179–C [the lawsuit filed in this court] and informing the parties that, "in the interim, this case will remain in abeyance." "This case" refers to the state administrative proceedings that plaintiff initiated against the Department of Revenue to challenge his reassignment. (The parties have not proposed any facts about when plaintiff initiated the administrative proceedings or when those proceedings were first put on hold.)

## OPINION

### A. *Deprivation of Property Interest*

■ The issue in this case is whether defendant Michael Morgan violated plaintiff John Evans's right to due process when defendant removed plaintiff from his position as chief legal counsel before giving him a hearing. The due process clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property without due process of law." In any case involving a public employee's challenge under the due process clause to an employment decision, the threshold question is whether the plaintiff was deprived of a property interest. *Luellen v. City of East Chicago*, 350 F.3d 604, 613 (7th Cir.2003).

■ Not all public employees have a property interest in their position. Before the due process clause is implicated, an employee must show that he has "a legitimate claim of entitlement to" his job. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). This claim of entitlement is not created by the Constitution but comes from "existing rules or under-

standings that stem from an independent source such as state law." *Id.; see also Swick v. City of Chicago,* 11 F.3d 85, 86 (7th Cir.1993) ("When state law confers tenure or some other right on a public employee—confers, that is to say, an entitlement as distinct from merely the hope or expectation that his employer's discretion will be exercised in his favor-the right is considered a form of property of which the employee may not be deprived without due process of law.").

■ The parties do not dispute that plaintiff had a property interest in *a* job. Under Wis. Stat. § 230.34(1)(a), "[a]n employee with permanent status in class ... may be removed, suspended without pay, discharged, reduced in base pay or demoted only for just cause." A statute that forbids removal absent just cause creates a property interest in continued employment. *Fittshur v. Village of Menomonee Falls,* 31 F.3d 1401, 1405 (7th Cir.1994); *see Sonnleitner v. York,* 304 F.3d 704, 711 (7th Cir.2002) (concluding that Wis. Stat. § 230.34 creates property interest); *Duncan v. State of Wisconsin Dept. of Health and Family Services,* 166 F.3d 930, 936 (7th Cir.1999) (same). Because plaintiff was "an employee with permanent status," he was entitled to the protections of the due process clause before he was deprived of his property interest.

■ The parties disagree on the question whether plaintiff was *deprived* of his property interest. Defendant argues that plaintiff's reassignment from chief legal counsel to a staff attorney position was only a "transfer." Because Wis. Stat. § 230.34 does not apply to transfers, defendant asserts that plaintiff's reassignment did not implicate a property interest. (In his proposed findings of fact, defendant suggests also that plaintiff accepted his new position voluntarily. *E.g.,* Dft.'s PFOF, dkt. # 31, at ¶ 48 ("[Plaintiff] reiterated his positive support for the change.") No deprivation exists when an employee voluntarily chooses to take a different position. *Yasak v. Retirement Board of the Policemen's Annuity and Benefit Fund of Chicago,* 357 F.3d 677 (7th Cir.2004); *Patterson v. Portch,* 853 F.2d 1399 (7th Cir.1988). However, by failing to do no more than propose this as a finding of fact, defendant has waived the argument for the purpose of summary judgment. *Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, Inc.,* 181 F.3d 799, 808 (7th Cir.1999) ("Arguments not developed in any meaningful way are waived.").) Plaintiff argues that his new position as a staff attorney was not just a transfer but a "demotion" because he received less pay, lost supervisory authority and was given fewer responsibilities.

An initial question that the parties have not briefed is whether the determination of a sufficient "deprivation" is made under state law or as a matter of federal constitutional law. In some cases, the Court of Appeals for the Seventh Circuit has suggested that it is a question of federal law. For example, in *Bordelon v. Chicago School Reform Board of Trustees,* 233 F.3d 524 (7th Cir.2000), the plaintiff was a school principal with a contract that prohibited his termination absent just cause. (The contract did not say anything about demotion or transfer.) When the plaintiff was moved into an administrative position, he filed a law suit under § 1983, asserting a due process violation. In analyzing the plaintiff's claim, the court of appeals noted that the plaintiff's contract gave him "a property interest in completing his contract in accordance with its terms." *Id.* at 530. However, in determining whether the plaintiff had been deprived of his property interest, the court did not look to the terms of the contract. Instead, the court stated, "[T]o be actionable under the due process clause, the deprivation of a public

employee's property interest in continued employment must be more than de minimis," a standard that it applied with reference to federal case law. *Id.; see also Gilbert v. Homar,* 520 U.S. 924, 929, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (assuming without deciding that "the protections of the Due Process Clause extend to discipline of tenured public employees short of termination"); *Ciambriello v. County of Nassau,* 292 F.3d 307, 313 (2d Cir.2002) ("While state law determines whether a public employee has a property interest in continued employment, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement."); *Head v. Chicago School Reform Board of Trustees,* 225 F.3d 794, 803 (7th Cir.2000) (using "de minimis" standard to determine whether there was a deprivation rather than considering language of contract).

In other cases, however, the court appears to have assumed that state law determines whether a deprivation has occurred. In *Duncan,* 166 F.3d at 936–37, the court concluded that a suspension with pay did not trigger due process protections because the state statute creating the property interest (Wis.Stat. § 230.34), required just cause only for suspensions *without* pay. *See also Sonnleitner,* 304 F.3d at 711 (concluding that demotion was deprivation of property interest when statute at issue (again, Wis.Stat. § 230.34), required just cause for demotions); *Gustafson v. Jones,* 117 F.3d 1015, 1020 (7th Cir.1997) (police officer did not have property interest in particular job assignment because statute required cause for discharges and suspensions, not transfers).

In *Swick,* 11 F.3d at 86–87, the court considered *both* state and federal law. The plaintiff was a police officer who had been placed on involuntary sick leave. Relying on a state law that prohibited police officers from being removed, discharged or suspended for more than 30 days without cause, he argued that his employer had violated due process by failing to give him a hearing. In rejecting the plaintiff's argument that he was deprived of a property interest, the court concluded first that the plaintiff's claim failed because being placed on involuntary sick leave did not constitute a "suspension" within the meaning of the statute. The court went on to state:

> But even if this is wrong and Swick was suspended within the meaning of a statute that creates an entitlement not to be suspended for more than thirty days without cause, we do not think he has a claim under the Fourteenth Amendment. We do not think that "property" within the sense of the amendment should be extended to the purely dignitary or otherwise nonpecuniary dimensions of employment.

*Id.* at 87. Thus, in *Swick,* the court appeared to hold that a plaintiff must show both that state law protected him from the particular adverse action at issue *and,* if it does, that he suffered a type of harm that resulted in a loss of "property" within the meaning of the due process clause. *See also Brown v. Brienen,* 722 F.2d 360 (7th Cir.1983) (although contract provided county employee with right to compensatory time off, "there is no rule that every breach of a public employment contract is a deprivation of property within the meaning of the due process clause").

The view suggested in *Duncan, Sonnleitner* and *Gustafson* makes sense. If it is state law that determines the existence of a property interest, it would follow that state law also determines the scope of the property interest. *Roth,* 408 U.S. at 577, 92 S.Ct. 2701 (property interest is "created" and "*defined*" by state law or other independent source) (emphasis added); *Dixon v. City of New Richmond,* 334 F.3d 691, 694 (7th Cir.2003) ("We look to inde-

pendent sources, such as state law, to determine the *scope* of property interests.") (emphasis added). However, I need not decide which of the standards articulated by the court of appeals is the correct one. Whether a deprivation of a property interest is determined by state law, federal law or both, I conclude that plaintiff was deprived of a property interest.

Wis. Stat. § 230.34 does not define the term "demotion" or any of the other actions listed in the statute. (Section 230.34 applies to demotions *and* removals. Because plaintiff does not argue that defendant's action against him constituted a removal with the meaning of the statute, I have not considered that question.) However, there is a definition provided in the Wisconsin Administrative Code by the Office of State Employment Relations and the Division of Merit and Recruitment Selection, which were given authority by the legislature to adopt rules and guidelines for the "effective operation" and "uniform application" of § 230.34. Wis. Stat. §§ 230.05(5) and 230.34(1)(c). Under Wis. Admin. Code § ER–MRS 1.02(5), "demotion" means "the permanent appointment of an employee with permanent status in one class to a position in a lower class than the highest position currently held in which the employee has permanent status in class." It is undisputed that plaintiff had obtained permanent status in his position of "Attorney–Management" and that the position to which plaintiff was reassigned, "Attorney," is in a lower class than "Attorney–Management." Thus, regardless whether state law would have placed restrictions on defendant's ability to move plaintiff from his position as the chief legal counsel to another "Attorney–Management" position, Wis. Stat. § 230.34 prohibited defendant from reassigning plaintiff to a position as a staff attorney absent just cause.

Defendant ignores the definition of "demotion" in § ER–MRS 1.02(5) and instead focuses on the definition of "transfer" provided in § ER–MRS 1.02(33): "the permanent appointment of an employee to a different position assigned to a class having the same or counterpart pay rate or pay range as a class to which any of the employee's current position is assigned." He argues that plaintiff was transferred rather than demoted because his new position has a "counterpart pay rate" to his former position. I need not determine whether defendant is correct. Even if plaintiff was "transferred," defendant points to nothing in the Wisconsin statutes or regulations that makes "demotions" and "transfers" mutually exclusive; plaintiff's reassignment could be a "transfer" *and* a "demotion" under Wisconsin law.

■ To the extent that I must determine whether plaintiff's demotion constituted a loss of property within the meaning of the Fourteenth Amendment, I conclude that it did. In *Swick*, 11 F.3d at 87, the court held that an employment decision must have some economic impact to be a loss of "property" under the due process clause; no deprivation occurs when the employee suffers only a "dignitary or otherwise nonpecuniary" harm. In this case, although the parties dispute whether the ceiling on plaintiff's potential earnings was lower as a result of his reassignment, it is undisputed that plaintiff received a lower raise as an attorney than he would have as chief legal counsel. It is also undisputed that plaintiff has lost his supervisory authority and has fewer responsibilities than he did as chief legal counsel. Thus, "it is reasonable to assume that [plaintiff's] demotion to a non-supervisory position would adversely affect his upward mobility in the future, and thus his income." *Sonnleitner*, 304 F.3d at 716; *Head*, 225 F.3d at

803 ("a loss of position that impedes future job opportunities or has other indirect effects on future income can inflict an actionable deprivation of property"). I cannot grant defendant's motion for summary judgment on the ground that plaintiff was not deprived of a property interest.

### B. *Adequacy of Procedures*

The second step of a procedural due process inquiry is to determine whether the procedures provided by the state were sufficient to satisfy the requirements of the Fourteenth Amendment. *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir.1996). Plaintiff challenges the adequacy of the procedures provided to him both before and after his demotion.

■ Generally, due process requires the state to give individuals notice and a meaningful opportunity to be heard *before* depriving them of property. *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *see also Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 545, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (even when tenured employee given full post-termination hearing, due process required notice of charges, an explanation of reasons and "an opportunity to present his side of the story"). Although defendant gave plaintiff notice of his reassignment, defendant does not suggest that plaintiff was given a meaningful opportunity to be heard before being demoted.

■ Failing to provide predeprivation procedures does not always violate due process. The Supreme Court has identified three factors that courts must weigh in determining how much process is due: (1) the burden on the government in providing a process before the deprivation; (2) the burden on the plaintiff if process is not provided; (3) the likelihood that predeprivation procedures would improve the

decision's correctness. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). With respect to the first factor, defendant has not identified any reason why it would have been burdensome to provide plaintiff with a hearing before he was demoted. *See, e.g., Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931) (necessity of quick action). Second, although the Supreme Court has held that adverse employment actions less severe than termination do not always require a predeprivation hearing, *Gilbert v. Homar*, 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997), the court of appeals has recognized that due process may require predeprivation hearings for demotions as well as terminations in some cases. *Sonnleitner*, 304 F.3d at 714.

I need not hesitate long on the severity of plaintiff's loss because his claim fails under the third factor from *Mathews*. Plaintiff has not shown that additional predeprivation procedures would have improved the accuracy of defendant's decision. Plaintiff argues that a hearing would have been useful because it would have shown that defendant did not have just cause to demote plaintiff. This argument misses the mark because defendant has never asserted that he had just cause to reassign plaintiff. Rather, his position has been that, under state law, he did not need just cause. A hearing on whether there *was* good cause to demote plaintiff would not help in determining whether defendant *needed* good cause.

Plaintiff could argue that the reason defendant denied him a hearing is irrelevant. As a general matter, holding a hearing is beneficial to determining whether just cause exists, which defendant was required to do before demoting plaintiff. Therefore, defendant should not be able to avoid liability just because his decision was

based on a legal conclusion that Wis. Stat. § 230.34 did not apply.

■ Although there is merit to this view, it cannot win the day for plaintiff in light of Supreme Court precedent holding that a defendant's *reasons* for denying a hearing are highly relevant in determining whether there has been a due process violation. Generally, a plaintiff suing under 42 U.S.C. § 1983 does not need to show that the defendants were acting in accordance with state law. In other words, a plaintiff may recover for the violation of his constitutional rights even when the defendants were acting contrary to state law. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

However, in the context of procedural due process claims, the Court has held that predeprivation procedures are not required when the deprivation is caused by "random and unauthorized" conduct rather than as a result of established state procedures. *E.g., Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). When an individual is deprived of property as result of a state employee's *violation* of state law, the Court has held that "predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." *Hudson*, 468 U.S. at 533, 104 S.Ct. 3194. Even when the defendant is an official and not the state itself, the Court still asks whether "the state" could have prevented the violation. It does not matter "[w]hether an individual employee himself is able to foresee a deprivation. ... The controlling inquiry is solely whether the state is in a position to provide for predeprivation process." *Id.* at 534, 104 S.Ct. 3194. Furthermore, the Court of Appeals for the Seventh Circuit has held that this rule applies even when the defendant is a high ranking, policy making official. *Easter House v. Felder*, 910 F.2d 1387, 1400 (7th Cir.1990) (en banc).

The Supreme Court has recognized a limited exception to this rule. In *Zinermon*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100, the Court held that the failure to provide predeprivation process may violate the Constitution, even when the defendants were not acting according to established state procedures. The plaintiff was a patient that, while medicated and disoriented, had signed a form requesting admission to and treatment in a mental hospital. After his release, he sued the hospital administrators, contending that they had violated his right to due process by admitting him without valid consent. Although the state had procedures directing what employees should do once a patient was determined to be incompetent, the Court concluded that the existence of these procedures did not bar the plaintiff's due process claim. State law did "not direct any member of the facility staff to determine whether a person is competent to give consent, nor to initiate the involuntary placement procedure for every incompetent patient." *Id.* at 135, 110 S.Ct. 975. Rather, the state had allowed the deprivation to occur by giving the defendant "uncircumscribed power" to make discretionary decisions. *Id.* at 136, 110 S.Ct. 975. Thus, even under *Zinermon*, a plaintiff must show that the absence of additional state procedures contributed to the defendant's error. As stated by the Court of Appeals for the Seventh Circuit, after *Zinermon*, the test is whether the defendant's acts could "have been predicted by the State or prevented through the implementation of additional predisposition procedural safeguards." *Lolling v. Patterson*, 966 F.2d 230, 234 (7th Cir.1992); *see also Hamlin v. Vaudenberg*, 95 F.3d 580 (7th Cir.1996)(courts must look at "the amount

of discretion of the state actor and whether that discretion is uncircumscribed"); *Easter House,* 910 F.2d at 1402 ("predictable deprivations of liberty or property which flow from authorized conduct are compensable under § 1983").

▮ In this case, plaintiff does not contend that there is anything lacking about the state's procedures for demoting employees under Wis. Stat. § 230.34. Rather, he contends only that defendant failed to follow § 230.34. Although he argues in his brief that defendant's discretion to transfer and demote was "virtually unlimited," Plt.'s Br., dkt. # 42, at 14, plaintiff has proposed no facts regarding the extent of defendant's authority. In any event, it was not defendant's discretion over job assignments that created the problem; it was his interpretation of state law. Defendant did not have "discretion" to interpret Wis. Stat. § 230.34 and related administrative regulations in any way he saw fit. Plaintiff provides no ground for holding that the state could have reasonably foreseen that defendant would misinterpret state law and he suggests nothing that the state could have done to insure defendant's compliance with the law.

▮ Because plaintiff has not shown that additional predeprivation procedures would have had any value in protecting him from the deprivation he suffered, the only remaining question is whether the postdeprivation procedures provided to plaintiff are adequate. Defendant points out that the court of appeals has declined to conclude in other cases that the postdeprivation procedures available to Wisconsin state employees are inadequate. *Schacht v. Wisconsin Dept. of Corrections,* 175 F.3d 497, 503 (7th Cir.1999). Plaintiff limits his argument on this question to a footnote, in which he states that his postdeprivation remedies are inadequate because they have not been prompt; he still

has not received a hearing. The problem with this argument is that it is undeveloped; plaintiff has not proposed any facts about when he initiated his administrative challenge or why the delay has occurred. The only evidence plaintiff has submitted on this point is a letter from the Department of Workforce Development, which states that the administrative proceedings will "remain in abeyance" while the federal lawsuit is pending. Thus, the letter suggests that the department decided to put its proceedings on hold after plaintiff filed the federal lawsuit, which was only a week after plaintiff's demotion became effective. In any event, plaintiff has not adduced sufficient evidence to support a finding that the delay is an unreasonable one. *Loudermill,* 470 U.S. at 547, 105 S.Ct. 1487 (allegation of nine-month wait for postdeprivation hearing insufficient without more to state claim for due process violation). Because plaintiff has not shown that he was denied due process, defendant's motion for summary judgment will be granted.

## ORDER

Defendant Michael Morgan's motion for summary judgment is GRANTED. The clerk of court is directed to enter judgment in favor of defendant and close this case.