In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1019

Louis Wozniak,

Plaintiff-Appellant,

v.

Thomas F. Conry, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Central District of Illinois.
No. 97-2182--Michael P. McCuskey, Judge.

Argued October 26, 2000--Decided January 10, 2001

Before Easterbrook, Kanne, and Evans, Circuit Judges.

Easterbrook, Circuit Judge.  After 28 years of teaching at the University of Illinois at Urbana-Champaign, Louis Wozniak became a rebel. Members of the engineering faculty teach undergraduate classes, which are divided into sections. To ensure consistency in grading across sections, the University requires professors to grade on a prescribed curve and to submit their grading materials. At the end of the fall semester in 1994 Wozniak turned in grades for his two undergraduate sections but refused to submit the required materials for review. Despite demands from increasingly high rungs of the University's hierarchy, Wozniak persisted in his position. In June 1995 Wozniak asked the Chancellor of the University to intervene; after the Chancellor declined to do so, the Dean of the College of Engineering gave Wozniak one last chance to comply or to explain himself. Wozniak let the deadline pass in silence, but the Dean did not. Wozniak asserts that the Dean barred him from teaching any further classes, canceled his research funds, and reassigned him to manage the engineering faculty's Web site. His title (Associate Professor of General Engineering) and his salary were unaffected, however, and he remains on the faculty. Wozniak contends in this suit under 42 U.S.C. sec.1983 that, by stripping him of professorial responsibilities and

privileges, the University violated both the first amendment and the due process clause of the Constitution.

The district court granted summary judgment for the defendants. We therefore give Wozniak the benefit of all reasonable inferences from the evidentiary record, which is rife with disputes. This means, in particular, that we accept Wozniak's contention that he has been foreclosed from any teaching (though the University says otherwise), barred from all research (again the University says otherwise), and thus effectively shuttled from the faculty to the administrative staff. Moreover, we accept Wozniak's contention that such a change of duties is out of the ordinary, indeed unheard of, for a tenured member of the faculty. It follows that Wozniak has created a material dispute about the question whether the University has deprived him of his professional stature, a form of property interest--for an employer that strips an employee of the ordinary incidents of the job, in a way that could lead a reasonable, self-respecting person to resign, has constructively discharged that person even if the employee's title and salary are unaffected. Thus a police department that strips a ranking officer of duties and assigns him to shuffle papers in a broom closet has deprived that officer of property. See Parrett v. Connersville, 737 F.2d 690 (7th Cir. 1984). Likewise a school board that reassigns a school's principal to a trifling administrative post. Head v. Chicago School Reform Board of Trustees, 225 F.3d 794, 803-04 (7th Cir. 2000). If Wozniak is describing events correctly, he lost more than his dignity and the opportunity to influence students. He lost all prospects of promotion to full professor (though these could not have been bright, since he was still an associate professor 28 years into his teaching career) and, because he lost research support, future scholarly publications, recognition within the profession, and the chance of obtaining private consulting work, all bit the dust. Wozniak did not quit, but this is not fatal to reliance on a theory of constructive discharge; some employees have poor prospects elsewhere (often their opportunities are diminished by the same acts that amount to a constructive discharge). See Hunt v. Markham, 219 F.3d 649 (7th Cir. 2000). Because state law and the University's regulations give Wozniak tenure as a faculty member and not just as an all-purpose employee equally suited to the classroom and the janitorial staff, the dramatic change of duties affected his "property" within the meaning of the due process clause. Compare Board of Regents v. Roth, 408 U.S. 564 (1972), with Perry v. Sindermann, 408 U.S. 593 (1972).

Wozniak believes that this resolves matters in his favor, but it does not, because the due process clause does not require that a formal, adversarial hearing precede every decision affecting property. An employee who keeps his title and salary has lost considerably less property than one fired outright, and we know from Mathews v. Eldridge, 424 U.S. 319, 333-35 (1976), that the extent of process increases with the severity of the deprivation. Wozniak was entitled to "some kind of hearing," Goss v. Lopez, 419 U.S. 565, 579 (1975) (emphasis in original), which means that he was entitled to an opportunity to present his side of the story. See Henry J. Friendly, "Some Kind of Hearing", 123 U. Pa. L. Rev. 1267 (1975). He had that chance many times, through multiple levels of review within the University, and one who has spurned an invitation to explain himself can't complain that he has been deprived of an opportunity to be heard.

What is more, even for the most important decisions, an evidentiary hearing is required only if there are material factual disputes. District courts regularly grant summary judgment without receiving oral testimony, and they dismiss complaints without receiving evidence, yet no one supposes that the Federal Rules of Civil Procedure violate the Constitution on that account. The due process clause does not require a hearing--in either a court or a university-- where there is no disputed issue of material fact to resolve. See Codd v. Velger, 429 U.S. 624 (1977); Paige v. Cisneros, 91 F.3d 40 (7th Cir. 1996). Here there is no material dispute: Wozniak refused to follow the University's grading rules, and in this suit he trumpets a claim of right to defy them. Why hold a hearing when the insubordination is conceded? Sometimes the Constitution extends an opportunity to tell one's side of the story and thereby inform the decisionmaker's discretion in selecting the appropriate penalty. See Cleveland Board of Education v. Loudermill, 470 U.S. 532, 543 & n.8 (1985); Goss, 419 U.S. at 583-84. The University gave Wozniak that chance at least three times, thus affording all the process that is due. A faculty member is hardly in a position to argue that the opportunity to submit an explanation or statement of position in writing is inadequate; professors make their living by the written word, so illiteracy is not a risk that the decisionmaker must consider when devising procedures for dispute resolution.

Wozniak's remaining arguments are frivolous. He contends, for example, that the University's decision deprives him of "substantive due

process." But this doctrine applies only to decisions affecting fundamental civil rights. See Washington v. Glucksberg, 521 U.S. 702, 720-22 (1997). No teacher has a fundamental right to hand in random or skewed grades, or to pretend that 95% of his students are better (or worse) than average. No person has a fundamental right to teach undergraduate engineering classes without following the university's grading rules. Quite the contrary, both a university and its students have powerful interests in the comparability of grades across sections, for grades are a university's stock in trade and class rank may be vital to a student's future. By insisting on a right to grade as he pleases, Wozniak devalues his students' right to grades that accurately reflect their achievements.

As for Wozniak's claim that students have a right under the first amendment, federal statutes, or notions of privacy to keep grading information from a university's administrators: Wozniak lacks standing to make such an argument. Students themselves would be the right plaintiffs. The contention also is unfathomable. Grades appear on students' transcripts; the transcripts bear the university's seal and imprimatur, so a university necessarily knows every student's grades. Transcripts (and diplomas, if the grades warrant them) are issued by the university, not by members of the faculty individually or collectively. It is the University's name, not Wozniak's, that appears on the diploma; the University, not Wozniak, certifies to employers and graduate schools a student's successful completion of a course of study. Universities are entitled to assure themselves that their evaluation systems have been followed; otherwise their credentials are meaningless. Some universities offer their faculty more control over grading than the University of Illinois afforded Wozniak, and maybe discretion is good. But competition among systems of evaluation at different universities, not federal judges, must settle the question which approach is best. Each university may decide for itself how the authority to assign grades is allocated within its faculty.

Finally, Wozniak's contention that he is the victim of "retaliation" for taking his stand against the University's grading policy adds nothing. A violation of an employer's lawful rules does not become an improper basis for decision just because the employee makes his position known to the public. Wozniak does not contend that other professors have defied the University's grading rules, kept their silence, and escaped any response. Without proof of that kind, the University's decision must be

understood as a reaction to Wozniak's behavior, not as a penalty for his speech about that behavior.

Affirmed