In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-4115

JEFFREY L. ATTERBERRY,

*Plaintiff-Appellant,*

*v.*

LEONARD SHERMAN, JOHN COGHLAN,
EMMONS RUSSELL, and ROBERT HEWSON,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 02 C 3088—**Jeanne E. Scott**, *Judge.*

ARGUED OCTOBER 27, 2005—DECIDED JULY 7, 2006

Before RIPPLE, KANNE, and WOOD, *Circuit Judges.*

KANNE, *Circuit Judge.* Jeffrey Atterberry was a high-level employee within the Illinois Department of Professional Regulation (the "DPR"). After allegedly engaging in misconduct, Atterberry was reassigned to perform the duties of a low-level employee, all the while retaining his salary and job classification as before. While some might consider themselves lucky to be able to perform easier work for the same amount of pay, Atterberry did not. He filed this 42 U.S.C. § 1983 suit against his four superiors (collectively, the "state actors"), claiming he was effectively demoted from his position without due process. The district

court found the state actors were entitled to qualified immunity. For similar reasons, we agree, and affirm.

## I.  HISTORY

Atterberry has worked for the DPR since 1984. Since 1995, he held the position of Public Service Administrator; specifically, he was Chief of the DPR's Enforcement Administration Unit (the "EAU"). He supervised about 10 employees, and he had his own office, car, and parking space.

An internal audit of the EAU was conducted around February 1999. The auditor requested all flex time records for everybody in the EAU. Atterberry responded that there were no flex time records. It turns out only DPR investigators earned flex time, and the EAU did not have any investigators. There was, however, a "practice" in place in which EAU employees earned "comp time," which was informally referred to as flex time. Not only did Atterberry not inform the auditor of this comp time, but as will be discussed in more detail later, he allegedly took active steps to keep this information from the auditor.

Atterberry's troubles began a year later in March 2000 when his longtime administrative assistant complained to defendant John Coghlan, the Director of Statewide Enforcement of the DPR, about Atterberry's conduct. Specifically, the assistant stated Atterberry had instructed her a year earlier to remove and hide all flex time records and not to mention them to the auditors. She also complained that Atterberry was often nowhere to be found during business hours and that he had told her to submit false travel vouchers on his behalf. She also reported being fearful of retaliation, should Atterberry learn of her reporting this information.

The next day, Coghlan met with Atterberry. Atterberry denied any misconduct; he also conveyed that he believed

his statement to the auditor regarding the flex time records was entirely accurate.

About a week later, Atterberry called his administrative assistant into his office. The assistant had been giving Atterberry the cold shoulder recently, and Atterberry "wanted to clear the air." What actually happened at that meeting is subject to some dispute; suffice it to say, the assistant felt threatened and upset as a result, and characterized the meeting as a confrontation. She then complained to Coghlan the next day, and reported that she was now afraid of Atterberry.

That same day, Coghlan reassigned Atterberry out of the EAU to perform the duties of an investigator "for the operational needs of the Department." Atterberry no longer supervised any employees. He now had to share an office, and he lost his car and parking space. He also was assigned an old metal desk with a broken chair. However, his salary and job classification (Public Service Administrator) remained exactly the same. He was assigned (and he fulfilled) the duties and responsibilities of an investigator, and he was told the reassignment was temporary.

A short time after Atterberry's reassignment, Atterberry filed a claim with the Illinois Civil Service Commission (the "Commission"), arguing he had been effectively demoted. The Commission ultimately found "no demotion action has been brought against you." It also found no violation of the "Code or Rules" and further stated it did not have jurisdiction over Atterberry's complaints regarding his working conditions.

During this time, Atterberry filed several grievances related to his alleged demotion and related working conditions. Some of these were denied (including his demotion grievance) or withdrawn, while others were resolved in Atterberry's favor. The most important action, however, began on March 24, when the DPR opened an investigation

to determine whether Atterberry had engaged in misconduct. Special counsel was retained, and the counsel's report was issued in July 2000. Defendant Leonard Sherman, Director of the DPR, evaluated the report and determined Atterberry had indeed engaged in serious misconduct. Discharge proceedings were instituted, albeit not for several months. They continued until December 2000. Written responses were filed, and pre-termination hearings were held in the Spring of 2001. Atterberry was discharged on May 11, 2001. Atterberry appealed his discharge to the Commission, which ordered in December 2001 that Atterberry be reinstated due to a lack of evidence of misconduct. In the end, Atterberry continued performing the duties of an investigator until February 2001, when he went on medical leave, a status he continues to hold today.

Atterberry then filed suit in the district court, claiming he was effectively demoted without being afforded due process. Atterberry alleged that the four state actors, in their respective official capacities,[1] violated Atterberry's Fourteenth Amendment right to due process. The district court found there were genuine disputes of material facts as to whether the state actors had infringed upon Atterberry's right to due process and whether he had been deprived of property. However, the district court found the state actors were entitled to qualified immunity, as Atterberry had failed to show that, as of the date of Atterberry's reassignment, "an employee, who was reassigned to lesser but still meaningful duties pending an investigation of alleged wrongdoing by the employee, but who retained both his pay and his job classification upon reassignment, had suffered

---

[1] The other two state actors besides Sherman and Coghlan were Emmons Russell and Robert Hewson, who, at separate times, held the position of Deputy Director of Enforcement Administration. They reported to Coghlan.

the loss of a clearly established property right in his employment."

## II. ANALYSIS

We review a district court's grant of summary judgment de novo. *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 793 (7th Cir. 2005) (citation omitted). Summary judgment is appropriate if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)); *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005) (citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

As an initial matter, we question whether Atterberry was even demoted. As alluded to earlier, a significant portion of Atterberry's protected interest lies in the Illinois Personnel Code, which provides that he could not be removed, discharged, demoted, or suspended for more than 30 days except for cause. *See* 20 ILCS § 415/11 (2000). It is undisputed Atterberry was not removed or suspended for more than 30 days. He was discharged, but he was later reinstated. In accordance with Atterberry's amended complaint, his entire argument lies in his claim that he was effectively demoted. He was relegated to the duties of a lowly investigator, while he simultaneously retained his salary and position as a Public Service Administrator. However, the Commission found Atterberry was not demoted, at least according to how that term is defined by the Illinois Administrative Code.

Furthermore, in *Lyznicki v. Board of Education, School District 167, Cook County, Illinois*, 707 F.2d 949 (7th Cir. 1983), we addressed the definition of "demotion." We explained that if we accepted the employee's argument,

"'demotion' would then mean a reduction in rank that did not result in a lower salary—*an odd meaning to impress on the word. Demotion and reduction in rank must be synonyms* in the statute[2] *as they are in ordinary language.*" *Id.* at 952 (emphasis added). We also stated, without deciding, that "[w]hether demotion without loss of pay would be a 'deprivation' in a constitutional sense may be doubted. . . ." *Id.* at 951. Considering this reasoning and the finding of the Commission, it does sound odd to say Atterberry was demoted (or to base his entire claim on effective demotion, as opposed to constructive discharge), given that he retained his salary and position. In any event, we need not resolve this issue because qualified immunity, the main focus of the parties' arguments, more clearly leads us to find in favor of the state actors.

In order to proceed against the state actors, Atterberry must (1) adequately allege the violation of a constitutional right, and (2) show the right was clearly established at the time of the alleged violation, such that a reasonable public official would have known that his conduct was unlawful. *See Delgado v. Jones*, 282 F.3d 511, 515-16 (7th Cir. 2002) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982)). Although Atterberry is not required to point to a case which precisely mirrors the facts of this case, he must, at a minimum, "point to a closely analogous case decided prior to the challenged conduct." *Sonnleitner v. York*, 304 F.3d 704, 716 (7th Cir. 2002) (citation omitted).

First, the facts in this case, even when viewed in the light most favorable to the plaintiff, simply do not show any violation of a constitutional right. Atterberry claims that he was deprived of a property interest in his position as Chief of the EAU. In the absence of a contract, this right must be rooted in state law. *See Ulichny v. Merton Cmty. Sch. Dist.*,

---

[2] The statute at issue in that case, now codified at 105 ILCS § 5/10-23.8b, was a different one than that relied on by Atterberry.

249 F.3d 686, 700 (7th Cir. 2001) (holding that a property interest in public employment requires a legitimate claim of entitlement to that position rooted in an independent source, such as contract or state law). But Illinois law only protects employees of the DPR against "demotion" or "discharge" without "cause." 20 ILCS § 415/8b.16. In turn, the Illinois Administrative Code defines "demotion" as the "assignment of an employee to a vacant position in a class having a lower maximum permissible salary or rate than the class from which the demotion was made." Ill. Admin. Code tit. 80, § 302.470(a) (2002).

The application of these provisions to the facts of this case leaves no ambiguity. Atterberry had no legitimate expectation grounded in state law that he would not be subjected to the sort of personnel action taken against him. He did have certain legitimate expectations; he could not be subjected to reduction in salary or rate. He was not deprived of these expectations. Consequently, he was not deprived of a cognizable constitutional property interest.

Second, Atterberry carries the burden of demonstrating the existence of a clearly established constitutional right. *See Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000) (citing *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994)). Atterberry relies on three cases to carry this burden, namely *Head v. Chicago School Reform Board of Trustees*, 225 F.3d 794 (7th Cir. 2000), *Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 1998), and *Parrett v. City of Connersville, Indiana*, 737 F.2d 690 (7th Cir. 1984).[3] We agree with the district court that these three cases did not clearly establish the existence of a constitutional right at the time Atterberry was reassigned on March 24, 2000.

For our purposes, *Head* established nothing. Atterberry argues that in *Head*, we held "a loss of position which

---

[3] It is important to note Atterberry relied on these three cases, and only these cases, before the district court.

impedes future job opportunities or has other indirect effects on future income constitutes a property deprivation." This is a mischaracterization of the case. First, we actually stated, "[w]e have recognized that a loss of position that impedes future job opportunities or has other indirect effects on future income *can* inflict an actionable deprivation of property." *Head*, 225 F.3d at 803 (citing *Swick v. City of Chicago*, 11 F.3d 85, 86 (7th Cir. 1993)) (emphasis added). But this statement was contained in dicta, and had no effect on the outcome of the case. The very next sentence in *Head* reads, "We need not definitively answer whether Head has adequately established that he possessed a protected property interest in remaining Pope Elementary's principal through the end of his contract, however, since we agree with the district court that Head's challenges to the adequacy of the procedures afforded him prior to his removal are without merit." *Id.* We simply *assumed* for purposes of our analysis that Head "*might* still have had a constitutionally protected property interest in remaining in" the position of principal. *Id.* (emphasis added). Because our discussion in *Head* contained no further analysis concerning what circumstances may or may not create a constitutionally protected property interest or right, it is a far cry to claim the case held as Atterberry does. Because we did not engage in any further discussion, there is no way the state actors, or a reasonable person, could discern from *Head* that they were violating a clearly established constitutional right.

On appeal, Atterberry is quick to point to a fourth case to demonstrate a clearly established constitutional right. He argues the court in *Head*, in adopting the view explained above, "relied upon this court's holding in *Swick v. City of Chicago*, 11 F.3d 85, 86 (7th Cir. 1993) which was decided seven years before the *Head* case and long before the conduct at issue in this case occurred." But *Swick* is of little benefit to Atterberry, either. The only relevant statement

made in *Swick* we can discern is that "[w]e can imagine a case in which a period of forced inactivity impeded promotional opportunities or had other indirect effects on post-retirement income . . ., but that is not argued . . . ." *Swick*, 11 F.3d at 86 (citation omitted). Atterberry misstates this statement as the holding from the case, but it was clearly dicta.

More importantly, the statement in *Swick* addressed a period of forced inactivity, specifically, being involuntarily placed on sick leave which did not result in any pecuniary loss. Atterberry was not placed in a like situation of forced inactivity; rather, he continued performing legitimate duties for the DPR, and was compensated the same as before the reassignment of his duties. *Swick*, even less so than *Head*, did not put the state actors, or any reasonable person, on notice that they would be violating a clearly established constitutional right of Atterberry's. It is apparent *Head* broadened the scope of the language from *Swick*, but not broadly enough to encompass Atterberry's situation. It is not until *Sonnleitner* in 2002 that we broadened the language from *Swick* enough to arguably apply to Atterberry's situation. This happened too late to help Atterberry's claim.

We further fail to see how *Parrett* and *Levenstein*, the two other cases Atterberry cited below, clearly established a constitutional right for Atterberry. Both *Parrett* and *Levenstein* involved situations concerning constructive discharge, not constructive demotion. At no time has Atterberry complained he was constructively discharged, so Atterberry certainly faces an uphill battle in relying on constructive discharge cases to argue his right not to be constructively demoted was clearly established.

Atterberry argues the cases are sufficiently similar to provide a fair warning to the state actors that their actions violated a constitutional right. Atterberry goes so far

as to argue the only difference between those two cases and his is that the employees in *Levenstein* and *Parrett* were eventually terminated or retired, whereas Atterberry subsequently went on medical leave. A closer review of the two cases reveals, however, that the differences are much more significant than Atterberry acknowledges. In *Parrett*, Parrett was formerly the chief of detectives for a police department, but he was reassigned to line captain. 737 F.2d at 693. He was forced to work in a windowless room (formerly a closet) and was assigned no work. *Id.* We did find Parrett was constructively discharged. *Id.* at 694. In effect, his working conditions were so miserable that he was forced to quit. His enforced idleness was humiliating, as his supervisors were determined that he should perform no police work "but just twiddle his thumbs in the closet." *Id.*

We found the situation in *Levenstein* to be very similar to that in *Parrett*. Levenstein was an internationally recognized physician and professor. *Levenstein*, 164 F.3d at 348. After an investigation into his alleged misconduct, Levenstein was forbidden from seeing patients for over 11 months and was eventually assigned the petty task of reviewing old medical training videos. *Id.* at 351. Levenstein argued he was constructively discharged because of the combination of the sham process his employer followed as well as the extensive suspension that was imposed. *Id.* He also argued he was never given an adequate opportunity to respond to the allegations against him. *Id.* We found the employer's decision to forbid Levenstein from seeing patients and forcing him to review old videos to be equivalent to the situation in *Parrett* in which the police officer was assigned to a closet with no work to do. *Id.* This conclusion makes sense in a constructive discharge situation, as both employees were essentially prevented from performing tasks related to their respective areas of employment.

Atterberry's situation is distinguishable on several different fronts from both *Parrett* and *Levenstein*, so many so that it would be unreasonable to assume the state actors had fair warning from them to know their actions were violating a clearly established constitutional right. It is once again important to note that *Atterberry makes no claim of constructive discharge*. Furthermore, he was performing tasks within the same department as he worked before, and he was performing legitimate and necessary duties for his employer. He was not placed into a closet, or made to perform make-work or tasks that served no real purpose. Rather, he worked as an actual investigator, working at the same desk and in the same office as other investigators, while performing the same duties. He also retained the salary he had before. We find his situation is too far removed from those in *Parrett* and *Levenstein* to put the state actors, or any reasonable person, on notice that their conduct was violating a constitutional right at that time.

### III.  CONCLUSION

For the reasons set forth above, the decision of the district court is AFFIRMED.

RIPPLE, *Circuit Judge*, concurring.  I agree completely with the court's conclusion that the facts of this case, when viewed in the light most favorable to the plaintiff, simply do not show a violation of a constitutional right. Upon reassignment to the position of investigator, Mr. Atterberry was deprived of his title as Chief of the DPR's Enforcement Administration Unit, as well as certain job responsibilities. However, Mr. Atterberry can claim no valid property interest, rooted in state or contract law, in either his title or his job responsibilities. The applicable Illinois statute proscribes a public employee's "demotion" without cause, 20 ILCS § 415/8b.16; in turn, "demotion" is defined narrowly by the Illinois Administrative Code as the reassignment to a position "having a lower maximum permissible salary or rate," which did not occur in this case. Ill. Admin. Code tit. 80, § 302.470(a) (2002).

I write separately, however, to express my view that the court's further inquiry into whether the constitutional right claimed was clearly established at the time of the alleged violation is unnecessary and inconsistent with Supreme Court precedent. The Supreme Court has advised that, to proceed in the face of a qualified immunity defense, a plaintiff must establish that there was a violation of a constitutional right; only if such a showing is made should the court then reach the question of whether that constitutional right was clearly established at the time of the violation. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001) (instructing the federal courts to "turn[] to the existence or nonexistence of a constitutional right as the first inquiry. . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity"). In light of our conclusion that no violation of a constitutional right has been established in this case, the principal opinion's ensuing analysis of *Head v. Chicago School Reform Board of Trustees*, 225 F.3d 794 (7th Cir.

2000), *Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 1998), and *Parrett v. City of Connersville, Indiana*, 737 F.2d 690 (7th Cir. 1984), is premised on merely hypothetical facts and, under the methodology mandated by the Supreme Court, unnecessary.

A true Copy:

      Teste:

                              _____
                              *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*