In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3800

ADETUNJI AKANDE,

*Plaintiff-Appellant,*

*v.*

RANDALL GROUNDS, TERRY GUY,
JEANIE CAMPANELLA, and DEE
DEE BROOKHART,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 05-C-4212—**J. Phil Gilbert**, *Judge.*

ARGUED DECEMBER 9, 2008—DECIDED FEBRUARY 9, 2009

Before FLAUM, WOOD, and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* Adetunji Akande alleged that
the defendants—all employees of the Illinois Department
of Corrections—deprived him of a property interest in
his employment in violation of the due process clause of
the Constitution. The district court granted summary
judgment to defendants, finding that they were entitled

to qualified immunity because Akande could not establish that he had been subject to a constitutional violation. For the reasons explained below, we affirm the judgment of the district court.

## I. Background

Akande began working for the Illinois Department of Corrections ("IDOC") in March 1990. After eighteen months, he was transferred to Robinson Correctional Center in Robinson, Illinois, where he worked in the clinical services division. The clinical services division was responsible for providing psychological, vocational and substance abuse counseling to prison inmates as well as attending to some inmate disciplinary matters. The division was comprised of three levels of employees: the clinical services supervisor, who oversaw the division; clinical casework supervisors, who served as intermediate managers; and correctional counselors. During the 1990s, Akande rose through the ranks at Robinson and in January 2003 he was promoted to the position of clinical casework supervisor. The clinical casework supervisor position was subject to the Illinois Personnel Code, 20 ILCS 415/1 *et seq.*, which provided that employees could not be terminated or demoted without cause.

Clinical casework supervisors at Robinson had a number of responsibilities. They were involved in making recommendations to the warden to resolve disciplinary allegations (or "tickets") against inmates. Typically, correctional counselors heard "minor tickets" while

"major tickets" were heard by a two-member panel known as the Adjustment Committee. One of the job duties of the clinical casework supervisor was to serve as a member of the Adjustment Committee. Corrections counselors were to enter reports on minor tickets into Robinson's Disciplinary Tracking System ("DTS"), while clinical casework supervisors were expected to enter the major ticket reports. Each DTS entry took about ten minutes, and there were approximately five to ten major ticket hearings per day.

Among other responsibilities, the clinical casework supervisor job description listed duties such as "supervis[ing] delivery of counseling services," "assign[ing] work," and "complet[ing] and sign[ing] peformance evaluations" for correctional counselors. In addition to these duties, the job description also tasked the clinical casework supervisor with "serv[ing] on various institutional committees" (including the Adjustment Committee). The job description also included a "catch-all" clause stating that a clinical casework supervisor "[p]erforms other duties as required or assigned which are reasonably within the scope of those enumerated above."

As mentioned above, Akande began his employment as a casework supervisor at Robinson in January 2003. At this time, Richard Cervantes ("Cervantes") was also serving as a clinical casework supervisor. However, in the fall of 2003, Cervantes was promoted to the position of acting clinical services supervisor, leaving Akande as the only clinical casework supervisor.

In late 2003 or early 2004, Randall Grounds was appointed warden of Robinson. Grounds consulted with Cervantes about Akande's job performance and came to believe that Akande was not performing his duties well. Specifically, Grounds was made aware of complaints that Akande was not inputting Adjustment Committee hearing reports into the DTS. Based on this information, Grounds directed Akande to personally enter data regarding major and minor ticket disciplinary hearings into the DTS at the end of each day, regardless of whether he was a hearing officer at that proceeding.[1] According to Akande, this task consumed most of his time and he began delegating this work to corrections counselors. Grounds again ordered Akande to enter all major and minor tickets into DTS. However, Akande continued to delegate this responsibility to corrections counselors.

Because he refused to follow Warden Grounds's order, Akande was referred for discipline. The prison held hearings on each disciplinary referral. In his defense, Akande claimed that he was entitled to delegate the task of inputting DTS tickets notwithstanding Warden Grounds's instruction to the contrary. Three separate disciplinary officers rejected Akande's defense. Plaintiff received an oral reprimand, a written reprimand, and a

---

[1] The parties dispute whether Grounds ordered Akande to put both major and minor ticket information into the DTS. We have credited Akande's version of events, as is appropriate at the summary judgment stage.

three-day suspension. In response, Akande filed six separate grievances under his union's collective bargaining agreement, claiming that he had been unfairly subjected to discipline. These complaints were settled or resolved prior to arbitration.

In January 2004, Grounds informed Akande that he would no longer have responsibility for supervising correctional counselors. However, Akande continued to perform some of his regular duties, including presiding over major ticket disciplinary hearings and making recommendations regarding ticket dispositions, reviewing inmates' requests for transfer and recommending transfer dispositions, and scheduling and lecturing in the Pre-Start Program (a series of classes that prepared inmates for their release).[2]

On March 3, 2004, Warden Grounds presented Akande with a memorandum entitled "Responsibilities of Casework Supervisor." It stated that all data entry for major (though not minor) disciplinary tickets was the responsibility of the casework supervisor. Grounds asked Akande to sign the memo, but Akande refused. Akande left work, claiming that he had a headache. That same day, Akande went on extended disability leave following a diagnosis of depression. He never returned to his job

---

[2] Defendants point to evidence that Akande—despite his claim that he was barred from all supervisory duties—still supervised counselors with respect to their inmate escape risk assessments and with respect to their workloads. However, we again credit Akande's version of events at the summary judgment stage.

at Robinson. On leave, Akande received disability payments that were significantly less than his salary at the correctional center.

In November 2005, Akande brought the present lawsuit. He alleged that beginning in late 2003 he was effectively removed from his position as a casework supervisor in which he had a constitutional property interest. The district court granted summary judgment to defendants, concluding that they were entitled to qualified immunity. Specifically, the district court held that Akande had "simply failed to present evidence from which a reasonable jury could conclude that he was deprived of a protected interest." Because it concluded that Akande was not deprived of a property interest, it did not address whether Akande was provided sufficient process and that Akande's alleged constitutional right was not clearly established.

## II.  Discussion

We review an order granting summary judgment de novo, construing all facts and drawing all reasonable inferences in favor of the non-moving party. *Russell v. Harms*, 397 F.3d 458, 462 (7th Cir. 2005). Summary judgment is appropriate if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is not genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Isbell v. Allstate Co.*, 418 F.3d 788, 793 (7th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).

Qualified immunity shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, the Supreme Court established a two-step inquiry for courts ruling upon the qualified immunity issue.[3] *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). To determine whether an official is entitled to qualified immunity, courts decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* at 201. If it is clear that there has been no constitutional injury, we need not proceed to the second step: the officials are entitled to immunity. *Id.*

The threshold question for a procedural due process claim is whether there has been an unconstitutional deprivation of life, liberty, or property. Akande claims that he was deprived of a property interest in his position as a casework supervisor at Robinson. In evaluating Akande's claim on appeal, it is important to understand

---

[3] The Supreme Court has recently clarified that the *Saucier* sequence is not an inflexible requirement. *See Pearson v. Callahan*, ___ U.S. ___, ___ S.Ct. ___, 2009 WL 159429, *9 (Jan. 21, 2009). However, courts are still free to follow the *Saucier* protocol where, as here, it facilitates the expeditious disposition of a case. *See id.* ("Although we now hold that the *Saucier* protocol should not be regarded as mandatory in all cases, we continue to recognize that it is often beneficial.").

that property interests are not created by the United States Constitution. Rather, they are created and defined by existing rules or understandings that stem from an independent source such as state law-rules. *Ulichny v. Merton Community School Dist.*, 249 F.3d 686, 700 (7th Cir. 2001) (citations omitted); *Atterberry v. Sherman*, 453 F.3d 823, 826 (7th Cir. 2006) (citation omitted). Here, state law defines Akande's property right as the right not to be removed, discharged, demoted, or suspended for more than thirty days without cause. 20 ILCS 415/11 (2006); 20 ILCS 415/8b.16; *see also Atterberry*, 453 F.3d at 826 (also considering a procedural due process claim made under 20 ILCS 415/11). Illinois law defines demotion as the "assignment of an employee to a vacant position in a class having a lower maximum permissible salary or rate than the class from which the demotion was made for reasons of inability to perform the work of the class from which the demotion was made." 80 Ill. Admin. Code § 302.470(a). Here, the undisputed evidence shows that Akande was not assigned to a vacant position with a lower salary. He was not terminated or told to leave his employment. Rather, his job duties were altered while he remained at the same position and received the same salary. Under Illinois law, these changes did not constitute a demotion, so Akande was not deprived of a property interest in his employment.

This court's decision in *Atterberry* confirms that Akande cannot establish a constitutional deprivation here. *See Atterberry*, 453 F.3d at 825-28. In *Atterberry*, an Illinois employee in the Department of Professional Regulation alleged that he was effectively demoted without due

process in violation of Illinois law. *Id.* at 825. He alleged that he had been stripped of his supervisory responsibilities, given an undesirable workspace (a metal desk and a broken chair), and was being required to perform the duties of a lower level employee. *See id.* at 824-25. However, the employee retained his job title and salary. *Id.* at 825, 827. This court affirmed summary judgment to defendants because the facts, even when viewed in the light most favorable to the plaintiff, "le[ft] no ambiguity" regarding the constitutional issue. *Id*. at 827. The employee's only expectation under state law was that he would "not be subjected to reduction in salary or rate." *Id*. Because the employee was not deprived of these expectations, "he was not deprived of a cognizable constitutional property interest." *Id.* It thus appears that *Atterberry* forecloses Akande's argument that the alteration of his job duties (but not of his title or salary) was a constitutional deprivation.

Akande attempts to distinguish *Atterberry* by stating that it dealt with whether the employee's rights were clearly established and not with whether a deprivation occurred. However, this is not an accurate characterization of *Atterberry*, for that case—in analyzing the qualified immunity issue—decisively stated that the facts did "not show any violation of a constitutional right." *Id.* at 826.

Akande also argues that a decision in defendants' favor is contrary to other decisions of this court, namely *Sonnleitner v. York*, 304 F.3d 704 (7th Cir. 2002), *Barrows v. Wiley*, 478 F.3d 776 (7th Cir. 2007) and *Wozniak v.*

*Conry*, 236 F.3d 888 (7th Cir. 2001). Akande's citations to *Sonnleitner* and *Barrows* are unavailing. He claims that they stand for the proposition that any action by a state employer that impacts an employee's future income is a constitutionally violative deprivation of property. But those cases actually hold that in order to *recover* for a constitutional deprivation, the plaintiff must show an economic loss. *See Sonnleitner*, 304 F.3d at 716 (actionable deprivation of property requires both "the loss of position" and "effects on future income"); *Barrows*, 478 F.3d at 780; *id.* at 780-81 (the "first step of the due process analysis requires us to consider initially whether Barrows had property interests in his [job], and secondarily whether he suffered economic harm from a property deprivation"). A showing of economic harm is a requirement for damages, not a theory for establishing a constitutional deprivation. Because here, Akande has not shown that he was deprived of a constitutional property interest, it is not relevant whether he suffered any economic loss due to the personnel actions at the correctional center.

Nor does *Wozniak* help Akande's case. In *Wozniak*, a tenured professor at the University of Illinois contended that he was barred from all teaching, barred from all research, and—despite holding the post of professor for twenty-eight years—assigned to manage his department's website, "effectively shuttl[ing] [him] from the faculty to the administrative staff." *Wozniak*, 236 F.3d at 889. We found that the professor had been constructively discharged because the "employer . . . strip[ped] an employee of the ordinary incidents of the job, in a way

that could lead a reasonable, self-respecting person to resign." *Wozniak*, 236 F.3d at 889-90. However the evidence here does not establish that Akande suffered a change in working conditions similar to that in *Wozniak*. As discussed above, though Grounds stated that he would no longer be supervising correctional counselors, Akande continued to perform many of his regular duties, including presiding over major ticket disciplinary hearings and making recommendations regarding ticket dispositions, reviewing inmates' requests for transfer and recommending transfer dispositions, and scheduling and lecturing in the Pre-Start Program. Akande's change in duties is not similar to the change in duties in *Wozniak*, where the employee was forbidden from performing all of his core job functions and forced into work that was outside his area of education and training.

It may be true that Akande was unhappy with the alteration of his duties. Regardless, that alteration did not amount to a "demotion" under Illinois law because he remained at the same job post and pay grade, *see* 20 ILCS 415/11 (2006); 20 ILCS 415/8b.16; *Atterberry*, 453 F.3d at 827, and was not stripped of all of his core job functions, *see Wozniak*, 236 F.3d at 889-90.

Because Akande has failed to show that he was subjected to a constitutional deprivation, we need not inquire whether the right he invokes was clearly established at the time of the alleged violation. *See Saucier*, 533 U.S. at 206. The defendants are entitled to qualified immunity.

### III. Conclusion

Because Akande has not shown that his constitutional rights were violated, the defendants are entitled to qualified immunity. We AFFIRM the judgment of the district court.