NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 27, 2013
Decided October 4, 2013

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

No. 12-3735

| | | |
|---|---|---|
| SALVADOR GARCIA, | | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| | *Plaintiff-Appellant*, | |
| *v.* | | |
| | | No. 10 C 3277 |
| CITY OF CHICAGO, | | |
| | *Defendant-Appellee*. | Rebecca R. Pallmeyer, *Judge*. |

**O R D E R**

Salvador Garcia was an auditor in the Tax Division of Chicago's Department of Revenue for seven years. After he was fired in May 2010, Garcia—who is of Mexican-American descent and was then 42 years old—filed suit, alleging that throughout his employment he was subject to national-origin discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623. The district court granted summary judgment for the City on all claims. We affirm.

Because this case comes to us on summary judgment, we review the district court's determination *de novo*, construing all facts in the light most favorable to Garcia. *Akande v. Grounds*, 555 F.3d 586, 589 (7th Cir. 2009). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Garcia was hired by the Tax Division for the position of Auditor I in April 2003. Though he received mostly positive work reviews during his first two years and was eventually promoted to Auditor II, his performance records reflect a stark change beginning in 2005. From that time onward, Garcia was rated as less than "good" in at least one evaluation category on all but one of his performance reviews. As a result, he was placed on "performance improvement plans" every six months by a series of supervisors. Use of the plans reflected the Division's judgment that Garcia's performance was deficient in areas such as accurately computing tax liability, complying with Tax Division policies and procedures, and improving his attitude or teamwork. His relationships with his supervisors soured, and he was subject to escalating measures of work-related discipline, including five written reprimands. In 2009, he was given a one-day suspension for failing to attend a meeting that had been called to discuss why he had not received a promotion and for misleading superiors about why he did not attend. That same year, he also received a three-day suspension for allowing a tax-collection deadline to lapse and a 15-day suspension for abusive and threatening behavior toward his supervisor. The downward spiral continued in 2010, when Garcia was issued a 29-day suspension for displaying "hostile, abusive, threatening, and intimidating" behavior toward co-workers. In the second half of 2009, he received the lowest possible rating on his performance review after completing none of his assigned tax assessments; he was fired on May 5, 2010.

Garcia does not deny that he received these performance reviews and was subject to repeated employee discipline. Notwithstanding his record, he insists that his adverse treatment was the product of discrimination. To prove this, he points not only to his suspensions and his ultimate loss of his job, but also to the Division's decision not to promote him to Auditor III on the three or four occasions when he applied—actions that he believes can be explained only by discrimination. Finally, he asserts that, upon returning from his 29-day suspension in early 2010, he found an envelope containing a copy of a charge of national-origin and age discrimination that he had filed with the Illinois Department of Human Rights. Suspiciously, he thought, the envelope had been opened and stapled shut by an unknown person. He contended that this indicated that his supervisors knew about his complaint and that it led to retaliation against him.

At oral argument, Garcia conceded that he waived his age discrimination claim by

failing to pursue it on appeal, and so we focus our review on his national-origin discrimination and retaliation claims under Title VII. Two methods to prove such claims are generally available to plaintiffs. The first is the "direct method," which requires a plaintiff to show that an adverse employment action was taken against him because of intentional discrimination, using either direct or circumstantial evidence. See, *e.g.*, *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008). Alternatively, a plaintiff may prove discrimination using the "indirect method," which requires him to present evidence that: (1) he belongs to a protected class; (2) he performed his job according to his employer's legitimate expectations; (3) he suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorably by the employer. *Id.* at 672-73.

The fatal problem for Garcia under either method is that the undisputed evidence shows that his job performance did not conform to his employer's legitimate expectations, and he has offered no evidence to show that his discipline was pretextual or applied in a discriminatory manner. See *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 327-29 (7th Cir. 2002). Garcia admitted in his deposition that he was never subject to any overt discrimination or disparaging comments by his superiors. He recounted one vague incident of hearing a co-worker say "bean something," but said that it was "not really discrimination" and was not able to give any further details about the incident, including who made the comment. Besides that, Garcia offers little more than basic denials that his alleged misconduct took place and bare allegations that his adverse treatment was based on his national origin. At the summary judgment stage, this is not enough to create a genuine dispute of material fact.

Garcia's retaliation claim is similarly deficient. Taken in the light most favorable to Garcia, the facts could lead a reasonable trier of fact to conclude that a co-worker opened the envelope containing the charge he filed with the Illinois Department of Human Rights and read its contents. Garcia has presented no evidence, however, that this action was taken by a supervisor or someone otherwise able to subject Garcia to retaliation. Even if he had, a bare allegation of knowledge by a superior that Garcia had taken protected action would be insufficient to show retaliation. See *Johnson v. Sullivan*, 945 F.2d 976, 981 (7th Cir. 1991). But this is all Garcia has—allegations that he filed a charge of which his employer was aware, and that he suffered adverse employment action. In the absence of evidence that would permit a trier of fact to connect the dots, summary judgment was appropriate.

AFFIRMED.